**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

DENNIS FRANK and
ANNE FRANK,

Plaintiffs,

v.

JEFFREY FOLMER, and
the JEFF FOLMER LAW OFFICE,

Defendants.

Civil No. 00-48 (JRT/RLE)

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Lawrence H. Crosby, CROSBY & ASSOCIATES, 630 Roseville Professional Center, 2233 Hamline Avenue North, St. Paul, Minnesota, 55113, for plaintiffs.

John D. Kelly and Robin C. Merritt, HANFT FRIDE, 1000 U.S. Bank Place, 130 West Superior Street, Duluth, Minnesota, 55802-2094, for defendants.

Plaintiffs bring this legal malpractice action against Jeffrey Folmer and his law firm, alleging that attorney Folmer was negligent in representing them in connection with their purchase of a small resort in Minnesota. This matter is before the Court on cross-motions for summary judgment. For the reasons that follow, the Court grants defendants' motion for summary judgment and denies plaintiffs' motion for partial summary judgment.

FILED NOV 26 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

35

## BACKGROUND

In June 1996, plaintiffs Dennis and Anne Frank (the "Franks") purchased the Little Sweden Resort located on Lake Vermillion near Cook, Minnesota from Raymond and Susan Wolfe (the "Wolfes"). The purchase was seller-financed with a contract for deed.

The Franks retained attorney Jeff Folmer ("Folmer") shortly before the real estate closing to express a title opinion and to represent them at the closing. A year earlier, the Franks had entered into a purchase agreement for the resort, which included an "as is" addendum. The addendum, which is signed by the Wolfes and the Franks, explains that "the property being purchased by Buyer, including the dwelling, other improvements, fixtures, appliances, and personal property, is not new, and is being purchased "AS IS." The addendum further provides that:

> It is understood that the Buyer accepts the property "AS IS." ANY WARRANTIES OF PHYSICAL CONDITION OF THE PROPERTY CONTAINED IN THIS PURCHASE AGREEMENT ARE VOID. The Seller has no further responsibility or liability with respect to the condition of the property. This provision shall survive delivery of the deed or contract for deed.

The closing occurred on June 17, 1996. It was attended by the Franks, who were represented by Folmer, the Wolfes, who were represented by their attorney, Michael Lantry, and Dale Lundblad, the realtor for BIC Realty. According to the Franks, all the discussions at the closing on the resort were held openly with the Wolfes, Lantry and Lundblad. There were no private consultations between the Franks and Folmer prior to or during the closing. The Franks also state that Folmer never explained to them the legal effect of the Buyer Purchasing "As Is" Addendum contained in the purchase agreement

the Franks signed the year before. Also at the closing, Folmer billed the Wolfes for closing documents he prepared relating to the sale of the resort.[1]

After the closing, the Franks took possession of the resort, but problems arose almost immediately. According to the Franks, the Wolfes had not obtained the cabin bookings at the resort as they had represented to the Franks; the main lodge was infested with a large bat population; there were septic problems and the computer system to track the resort's income flow was inaccessible.

The Franks also allege that Lundblad made misrepresentations concerning the condition of the property. Specifically, plaintiffs claim that Lundblad knew that the 1995 bookings were down and assured the Franks that the 1994 income figures were more realistic. According to the Franks, Lundblad also knew that the well at the resort had been non-conforming according to a report for the St. Louis County Health Department, but that this information came to the Franks' attention only after they signed the purchase agreement.

Upon discovery of these defects, the Franks again turned to Folmer for legal assistance. In August 1996, Folmer wrote to Michael Lantry, attorney for the Wolfes, about the problems with the condition of the property and the Franks' belief that misrepresentations had been made by the Wolfes and Lundblad. On September 17, 1996, the Franks decided to withhold payment under the contract for deed. As a result, the

[1] The documents Folmer drafted included a Security Agreement, UCC-1 Financing Statement, UCC-2 Fixture Financing Statement, Escrow Agreement to deal with a title issue, and the Well Disclosure Statement.

Wolfes declared a default and served a statutory notice of cancellation of the contract for deed.

In October 1996, the parties negotiated and reached a settlement agreement (the "Agreement") with respect to the default on the contract for deed and the alleged misrepresentations. According to the Agreement, the Wolfes agreed to amend the contract for deed and reduce the purchase price of the resort by $25,387.85 at the end of the contract term. Agreement ¶ 1. For their part, the Franks agreed to release any claims against the Wolfes for any alleged misrepresentations made in connection with the sale of the resort. This provision provides:

> Purchaser agrees not to assert now or in the future any claims for rescission, modification or cancellation of the Contract for Deed based upon representations of the Seller as to conditions of the property. Such conditions include conditions of the septic system, bat infestation, conditions of docks, conditions of cabins and out buildings and reservations or the lack thereof.

Agreement ¶ 3. The Wolfes also agreed to forgive the Franks' default and withdraw the notice of cancellation of the contract for deed filed against the Franks:

> Seller agrees to terminate or withdraw the Notice of Cancellation of Contract for Deed served by Seller upon Purchaser on September 19, 1996. Furthermore, Seller shall not assert now or in the future any claims relating in any way to matters which led to the refusal of Purchaser to make the contract for deed payment due on September 17, 1996 and which resulted in service of notice of cancellation of contract for deed.
>
> Seller shall be responsible for preparation of the Withdrawal of Notice of Cancellation of Contract for Deed.

Agreement ¶ 4. Within a year, the Wolfes filed another cancellation of the contract for deed against the Franks after they allowed the contract for deed to fall into default. The Franks, with their present counsel, filed suit against the Wolfes, Dale Lundblad and BIC

Realty ("state court defendants") in Saint Louis County District Court, seeking an injunction or rescission of the contract for deed and return of payments made by the Franks on the contract because of alleged misrepresentations made by state court defendants in connection with the sale of the resort.

On August 17, 1999, the district court for St. Louis County, Minnesota granted the state court defendants' motion for summary judgment as to the Franks' misrepresentation claims. In doing so, the court noted that the Franks purchased the resort on an "as is" basis. The court also determined that the Franks' misrepresentation claim against defendants failed as a matter of law under the facts of the case. As to the Franks' misrepresentation claim against Lundblad and BIC Realty, the court determined that they failed to show that Lundblad knew that his statement concerning the condition of the septic system was false. The court further determined that the Franks' reliance on the Wolfes' income representations was unreasonable since the Franks were given an opportunity to inspect the books, but declined to do so.

Failing to succeed on their state court action, the Franks then filed this lawsuit against defendants, alleging that Folmer breached his duty to represent the best interests of the Franks in connection with their purchase of the resort. The Franks' central allegation is that Folmer committed legal malpractice by advising them to negotiate a settlement and release of their misrepresentation claim against the Wolfes rather than cure the default and seek rescission of the contract based on the Wolfes' misrepresentations. Had they not followed Folmer's legal advice in connection with settling these issues, the Franks maintain that they could have sued the Wolfes for

misrepresentation, rescinded the contract for deed, and recovered their payments and damages against the Wolfes. The Franks also allege that Folmer was negligent in failing to explain the legal ramifications of the "as is" clause contained in the purchase agreement. Finally, the Franks claim that Folmer simultaneously represented the Wolfes during the real estate closing, shared adjoining office space with Lundblad, the realty agent, and that Folmer never disclosed these apparent conflicts of interest to the Franks.

## ANALYSIS

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.*, 612 F.2d 1076 (8th Cir. 1980). However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir. 1981).

## II. Legal Malpractice Claim

To prevail in a legal malpractice action, a plaintiff must prove: 1) the existence of an attorney-client relationship; 2) acts amounting to negligence or breach of contract; 3) that such acts were the proximate cause of the plaintiff's damages; and 4) that but for defendant's conduct, the plaintiff would have been successful in the action. *Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406, 408 (Minn. 1994) (quoting *Blue Water Corp. v. O'Toole,* 336 N.W.2d 279, 281 (Minn. 1983)); *Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686, 692 (Minn. 1980).

### A. Misrepresentation Claim

The Franks argue that, but for the advice Folmer gave them in the settlement of their claims with the Wolfes, they would have prevailed in a misrepresentation claim against the Wolfes. Defendants argue that the Franks' legal malpractice claim on this issue fails as a matter of law because plaintiffs' "case within a case" cannot survive summary judgment. Defendants emphasize that in order for the Franks to prove their legal malpractice claim, they must show that they would have prevailed on their

misrepresentation claim against the Wolfes. However, the Franks have already sued the Wolfes for misrepresentation and lost in a final judgment on the merits. Defendants argue that plaintiffs are now bound by that judgment under principles of collateral estoppel and therefore cannot make out an essential element of their claim.

The Court first addresses whether collateral estoppel applies to bar this portion of the Franks' malpractice claim. It is well-settled that, under 28 U.S.C. § 1738, a federal court must give a state court judgment the same preclusive effect as would be given the judgment under the law of the state in which the judgment was rendered. *Gopher Oil Co. v. Bunker,* 84 F.3d 1047, 1051-52 (8th Cir. 1996) ("We accord full faith and credit to state court judgments, giving them the same preclusive effect in federal court as they would have in state court."). Under Minnesota law, collateral estoppel applies if:

> 1) the issue was identical to one in a prior adjudication; 2) there was a final judgment on the merits; 3) the estopped party was a party or in privity with a party to the prior adjudication; and 4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Willems v. Commissioner of Pub. Safety,* 333 N.W.2d 619, 621 (Minn. 1983); *Ellis v. Minneapolis Comm'n on Civil Rights,* 319 N.W.2d 702, 704 (Minn. 1982); *Saudi American Bank v. Azhari,* 460 N.W.2d 90, 92 (Minn. Ct. App. 1990).

As previously stated, if plaintiffs cannot show that they would have prevailed on their misrepresentation claim against the Wolfes, they cannot establish the "case within a case" element of their malpractice claim. Here, all the elements of collateral estoppel are satisfied to bar the Franks from relitigating the misrepresentation claim. First, the relevant issue—whether the Franks would have prevailed on a misrepresentation claim against the Wolfes and Lundblad—is identical to the misrepresentation claim that the

state court decided. Second, there was a final judgment on the merits. The state court granted defendants' motion for summary judgment and it was not appealed. *John Morrell & Co. v. Local Union 304A,* 913 F.2d 544, 563 (8th Cir. 1990); Restatement (Second) of Judgments § 13 (stating that "for purposes of issue preclusion, 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect"); 18 Wright & Miller, Federal Practice & Procedure § 4434 at 321. Third, the party being estopped —the Franks—were a party to the state court litigation. Finally, the Franks had a full and fair opportunity to litigate their misrepresentation claim in state court. St. Louis County District Court Judge Gary J. Pagliaccetti fully resolved the parties' dispute on summary judgment in a thoroughly analyzed opinion.

The Franks attempt to avoid the preclusive effect of the state court judgment by claiming that the state court based its decision on the fact that the Franks released their claim against the Wolfes in the agreement that Folmer negotiated on their behalf. A close reading of the state court opinion, however, reveals that such is not the case. Although the court referred to the release of claims provision in the background section of the opinion, the court did not rely upon it in its analysis. Rather, the court reviewed the misrepresentation claim on the merits and determined that plaintiffs' claim failed as a matter of law. As to plaintiffs' misrepresentation claim against Lundblad and BIC Realty, the court determined that an essential element of their claim was lacking. Specifically, plaintiffs failed to show that Lundblad knew that his statement concerning whether the septic system was up to code was false:

> Based upon the undisputed fact Lundblads sought an inspection from the County Health Department to make sure the septic system was up to code, there could not have been any misrepresentation on the part of BIC or Lundblads. According to the County's report, the septic system was not failing and could be used. Lundblads, Knoer and BIC did not know the facts to be false and therefore, they asserted knowledge they believe to be correct based upon the County's report.

As to the Franks' claim against the Wolfes, the court stated that the Franks' reliance on the Wolfes' income representations was unreasonable since the Franks were given an opportunity to inspect the books, but declined to do so:

> It is undisputed the Franks were asked if they wanted to see the books reflecting the past annual income of the Resort and the Franks chose to forego the opportunity. The Wolfes cannot be liable to the Franks for misrepresentation of the Resort's annual income when the Wolfes gave the Franks an opportunity to examine the Resort's books.

The court then determined that the rest of the Franks' misrepresentation claims against the Wolfes and Lundblad failed because of the "as is" addendum contained in the purchase agreement, a provision that the Franks bound themselves to well before they retained Folmer as their counsel.

On this record, the Court concludes that collateral estoppel applies to bar the Franks from relitigating the issue of whether they were the victims of misrepresentation. Numerous courts, including Minnesota courts, have applied collateral estoppel to bar a plaintiff's legal malpractice claim. *Poferl v. National Title Co.*, No. C2-00-1512, 2001 WL 267464 at *3 (Minn. Ct. App. Mar. 20, 2001) (unpublished opinion); *Bastien v. Kane,* No. C4-97-2147, 1998 WL 236165 at *3 (Minn. Ct. App. May 12, 1998) (unpublished opinion); *Stensland v. Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch*, No. 01-0087, 2001 WL 856565 at *2-4 (Wis. Ct. App. July 31, 2001). In all three cases,

the courts determined that issues previously decided and litigated which were material to a plaintiff's malpractice claim precluded plaintiff from re-litigating those issues again. As fully explained above, the same result applies here. Absent proof of misrepresentation, the Franks cannot make out the "case within a case" element of their malpractice claim against Folmer. Accordingly, the Court grants this portion of the defendants' motion for summary judgment.

**B. The "As Is" Claim**

The Franks next claim that Folmer was negligent in failing to explain the "as is" addendum contained in the purchase agreement. This claim also fails. It is undisputed that the Franks signed the "as is" addendum in 1995 on their own accord, a year before retaining Folmer as their attorney. As a result, there was simply no attorney-client relationship between Folmer and the Franks at the time the Franks bound themselves to the "as is" agreement. *Togstad v. Vesely, Otto, Miller & Keefe,* 291 N.W.2d 686, 692 (Minn. 1980) (existence of attorney-client relationship necessary to prevail on legal malpractice claim); *Holmes v. Winners Entm't Inc.*, 531 N.W.2d 502, 504 (Minn. Ct. App. 1995). To the extent Folmer had a duty to explain to the Franks the meaning of the term once he was retained as the Franks' attorney, the record reveals that Mr. Frank understood the meaning of the term "as is."

**C. Conflict of Interest**

Finally, the Franks allege that Folmer committed legal malpractice by simultaneously representing the Wolfes during the real estate closing. The Franks base

this allegation on a single piece of evidence: an invoice billing the Wolfes for the preparation of certain documents prepared for the real estate closing, the cost of which, according to the purchase agreement, was the Wolfes' responsibility. The invoice is dated June 17, 1996 (the closing date) and bears the notation that it was paid by the Wolfes at closing.

The record also contains an affidavit from Michael Lantry, the attorney who represented the Wolfes in the sale of the resort to the Franks. In this affidavit, Lantry confirms that he, not Folmer, represented the Wolfes in the sale of the resort to the Franks. Lantry further states that Folmer drafted a variety of standard form documents required for closing as an accommodation to the transaction and that all the documents drafted by Folmer were reviewed and approved by Lantry as attorney for the Wolfes. The Court concludes that no reasonable jury could find from this evidence that Folmer represented the Wolfes in this transaction. Accordingly, the Court also grants defendants' motion for summary judgment as to plaintiffs' conflict of interest claim.

Thus, for all the foregoing reasons, the Court grants defendants' motion for summary judgment and denies plaintiffs' motion for partial summary judgment.

**ORDER**

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion for partial summary judgment [Docket No. 18] is **DENIED**;

2. Defendants' motion for summary judgment [Docket No. 26 & 32] is **GRANTED**;

3. Plaintiffs' complaint [Docket No. 1] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: Nov. 26, 2001
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge